UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

DONALD YOUNG,                     )
                                  )
     Plaintiff,                   )
                                  )
v.                                )   Civil Action No. 97-S-1641-NW
                                  )
CITY OF TUSCUMBIA;                )
THE TUSCUMBIA CITY FIRE           )
DEPARTMENT; TOMMY McANALLY,       )
Fire Chief; and RAY CAHOON,       )   **ENTERED**
(former) Mayor,                   )
                                  )   MAR 29 1999
     Defendants.                  )

## MEMORANDUM OPINION

Plaintiff, Donald Young, commenced this action on July 3, 1997, seeking redress under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101 et seq. He claims he suffered discrimination because of a hearing impairment and seeks "back-pay (plus interest), declaratory and injunctive relief, nominal damages, compensatory damages, punitive damages, lost seniority and benefits." (Complaint, Doc. No. 1.) The action presently is before the court on the City of Tuscumbia's motion for summary judgment.[1]

---

[1] Defendants Tuscumbia Fire Department, Tommay McAnally in his official capacity as Fire Chief, and Ray Cahoon in his official capacity as Mayor, are all named as agents of the City of Tuscumbia ("City"). The only relief available in this action is against the employer, the City. See Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual liability under the ADA). Thus, although only defendant City requests summary judgment, this court will consider the motion as one for all defendants.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64

2

F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for

3

the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTS

Donald Young has a hearing impairment and wears hearing aids. Young served as a volunteer fireman with the Tuscumbia Fire Department for roughly three years. The Fire Chief of that department, Tommy McAnally, described the duties of a volunteer fireman as follows: "A volunteer fireman is — basically helps the regular — he might back them up or most of the time he will go get stuff off the trucks. If they need equipment or something, he'll go to the trucks and get it." (McAnally deposition, at 8.) These duties may be performed during response to a fire. Chief McAnally characterized Young's performance of these duties as "good." (*Id.*) Young was honored as Volunteer of the Year on two occasions.

4

Young applied for employment as a regular fire fighter with the City of Tuscumbia ("City") on January 5, 1996. The application forms, which Young signed that day, indicate "requirements" for "Police and Fire Applicants." (Defendant's brief, Doc. No. 20, exhibit 3.) The seven designated categories of requirements were: (1) education; (2) physical; (3) agility; (4) training; (5) background; (6) character; and (7) documentation. (See id.) The description under "PHYSICAL" reads: "Must be certified by a licensed physician as to being physically fit to perform the duties of a Fire Fighter/Police Officer." (Id.) All applicants for a fire fighter position are subjected to the same medical examination. (See McAnally affidavit.)

The Civil Service Board of Tuscumbia interviewed Young on February 20, 1996, and submitted his name to the City Council for consideration two days later. Young, as usual, had worn his hearing aids during this interview. The council acted upon the board's recommendation on March 4, 1996, and "hired as firemen: Matt Moore and Donald Young." (Id., exhibit 5.) Present at the council meeting were: Ray Cahoon, Mayor; Warren Johnson; Willie Buchanan; Donald Beard; Charles Lemon; Jerry Wilbanks; Flora Hanback, City Clerk; Wayne Burns, Police Chief, Millard Conley,

Building Inspector; Tommy McAnally, Fire Chief; and Robert Sims, Street Superintendent.

On March 6, Young was directed to KellerMed in Sheffield, Alabama for a pre-employment physical examination. The examining physician, Dr. Daniels, refused to recommend Young for employment by the City, because he found Young "does not meet requirements for job due to severe hearing loss." (Defendant's brief, exhibit 6.)

Mayor Cahoon scheduled "a second opinion pre-employment physical examination" for Young at the City's expense, and notified Young and Chief McAnally of such. (*See id.*, exhibit 7.) William C. Walley, M.D., with Occupational Health Services, examined Young and reported that he "<u>is not</u> in good health and physically fit for the performance of the duties as a Fire Fighter." (*Id.*, exhibit 8 (emphasis supplied).) Each of these examinations of Young included a hearing test conducted without use of his hearing aids.

In the third and final examination, George Evans, M.D. certified on May 24, 1996, that Young "<u>is</u> in good health and physically fit for the performance of the duties as a Fire Fighter." (*Id.*, exhibit 9 (emphasis supplied).) Dr. Evans conducted no hearing test, however.

That same day, Chief McAnally sent a "Notice of Employment" to

6

the Alabama Fire College and Personnel Standards Commission. Such notice is required to be sent within ten days following employment of an applicant. Young then completed all necessary employment and tax forms, and has been on the City's payroll ever since.

### III. DISCUSSION

#### A. Claim Under The ADA

Congress enacted the Americans with Disabilities Act of 1990 (ADA) for the stated purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress sought "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(8). To achieve those purposes, the Act commands that

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The Act imposes an affirmative duty on employers to provide reasonable accommodations for disabled individuals. Thus, the term, "discrimination" is defined broadly, to include "not making reasonable accommodations to the known

7

physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Young bears the burden of proving by a preponderance of the evidence that defendant intentionally discriminated against him because of his disability. That can be done either by direct or circumstantial evidence. When, as here, the evidence of intent is circumstantial in nature, courts are guided by the now familiar analytical framework that the Supreme Court announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817, 36 L.Ed.2d 668 (1973), and then elaborated in its progeny. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If a plaintiff does so, then at the second stage of analysis the burden of production shifts to the defendant to rebut the presumption[2] of

---

[2] See *Walker v. Mortham*, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998), for an excellent discussion of the reasons why presentation of a prima facie case creates "a *presumption*, and not an *inference*, of intentional discrimination." (Emphasis in original.)

8

intentional discrimination thus created by articulating legitimate, nondiscriminatory reasons for the contested employment action. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If a defendant carries its burden, then in the final step of inquiry the plaintiff must have an opportunity to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825), *cert. denied sub nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

1. **The *prima facie* case**

The first step of the analysis is satisfied when the plaintiff establishes a *prima facie* case. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a disability; (2) that he is a "qualified individual" (*i.e.*, that he can perform the essential functions of the job position he holds or seeks, with or without reasonable

9

accommodation being made by the employer[3]); and (3) that he was discriminated against because of his disability. *See* 42 U.S.C. § 12132; *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, a plaintiff must show that the employer had actual or constructive knowledge of his disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

The City contests the third element of Young's *prima facie* case.

### a. Was Young discriminated against because of his disability?

Young contends he was "discriminated against because of his disabilities with regard to hiring, advancement, training, supervision, employee compensation, and other terms, conditions[,] and privileges of employment." (Complaint, ¶ 17.) Young apparently alleges three grounds for his claim. First, he claims he was hired on March 4, 1996, and terminated on March 6 "because

---

[3] *See* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.").

10

of a failure to pass a hearing test without his hearing aids." (Plaintiff's objection to motion, Doc. No. 17, at ¶ 7.) Next, Young claims he was twice subjected to "pre-employment test[s]" which were discriminatory, given that his disability was known, and he was tested without his hearing aids. He further claims that, as a result of this discriminatory treatment, he was denied "the same opportunity to advance as other persons hired at the same time as he." (Complaint, ¶ 14.)

### (1) "Termination" on March 6

One stated condition of employment as a fire fighter for the City is attaining certification from a licensed physician that the applicant is physically fit for the job. Young acknowledged this prerequisite by his signature on the application for employment he submitted on January 5, 1996, and subsequently with deposition testimony on July 18, 1998. (See Young deposition, at 15.) Young did not receive personally, or provide the City, such certification until May 24, 1996. Furthermore, paperwork necessary for employment with the City was not completed until after this certification. (See Notice of Employment, defendants' motion at exhibit 10; Hanback affidavit, defendants' motion at exhibit 10.)

Also telling are Young's description of the physical examinations as "<u>pre-employment</u> test[s]" and his characterization

11

of being "<u>finally</u> hired" on May 24. (Plaintiff's objection to motion, ¶¶ 6, 7 (emphasis supplied).)

Thus, this court finds Young was not hired by the City until May 24, 1996 and, therefore, was not terminated on March 6.[4]

### (2) Pre-employment tests

The City bears a duty to reasonably accommodate disabled applicants for employment. At issue is the City's requirement of passing a physical examination, and whether such requirement as applied to the disabled plaintiff constitutes discrimination in violation of the ADA.

The ADA provides as follows:

> **(d) Medical examinations and inquiries**
> **(1) In general**
> The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.
> **(2) Preemployment**
> **(A) Prohibited examination or inquiry**
> Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
> **(B) Acceptable inquiry**
> A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

---

[4] Because he was not hired on March 4 and, therefore, not fired on March 6, Young's claim for discrimination actually is for a failure to hire. The only grounds for such a claim, however, are addressed in Part II.A.1.a.(2), *infra*.

12

> **(3) Employment entrance examination**
> A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, <u>and may condition an offer of employment on the results of such examination, if</u>—
> (A) <u>all entering employees are subjected to such an examination regardless of disability</u>; ....

42 U.S.C. § 12112(d) (emphasis supplied).

The statute thus permits the City to impose the requirement of attaining certification of physical fitness on all applicants. The City subjected each applicant to the same examination. The City arranged for three examinations of Young, the last of which did not involve a hearing test. Although a delay may have resulted because the first two examinations did require a hearing test, each applicant is subjected to such exams. The court finds that the act of the City in allowing a third exam, one without a hearing test, was an eminently reasonable accommodation of Young. *Cf. Stutts v. Freeman*, 694 F.2d 660, 669 (11th Cir. 1983) (finding failure to reasonably accommodate under the Rehabilitation Act where employer relied on tests that did not account for the applicant's disability, because employer did not acquire or rely on results from tests that did account for the applicant's disability).

13

### (3) Opportunity to advance

Young offers nothing more than the bare allegation he was denied the opportunity to advance in step with others hired at the same time. Nothing further, neither argument nor evidence, supports such a comparison. The court presumes Young intends to compare his advancement with that of Matt Moore, whom the council approved contemporaneously with Young. Nevertheless, the court found above that Young was not employed until May 24, 1996, one and a half months after the council's March 4 meeting. Nothing before the court suggests when Moore actually began employment, nor when anyone other than Young did. Without some relevant comparison, Young has no claim.

Accordingly, this court holds that Young was not discriminated against because of his disability.

## IV. CONCLUSION

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 29th day of March, 1999.

United States District Judge

14